In the Interest of J.L.M., Minor.

JUVENILE OFFICER, Respondent,

v.

V.G., Appellant.

No. WD 45650.

Missouri Court of Appeals,
Western District.

Jan. 19, 1993.

Todd W. Ruskamp, Shook, Hardy & Bacon, Kansas City, for appellant.

Dale Nathan Godfrey, Kansas City, for minor respondent.

Lori Stipp, Kansas City, for respondent juvenile officer.

Before BRECKENRIDGE, P.J., and SHANGLER and SPINDEN, JJ.

BRECKENRIDGE, Presiding Judge.

On July 23, 1991, the Juvenile Officer for Jackson County, Missouri, filed a petition for termination of the parental rights of V.G., the biological mother, with regard to her son, J.L.M. The petition also sought to terminate the parental rights of N.J., the biological father. The trial court terminated the parental rights of both parties; however, only V.G. has appealed.

The judgment is affirmed, but the cause is remanded for disposition of the request by appellant's attorney for fees.

The petition alleged that J.L.M. has been adjudicated to be abused or neglected, that J.L.M. was subjected to acts of sexual abuse by his stepfather and that although J.L.M. informed his mother of this, she failed to protect him from further abuse. The petition also alleged that J.L.M. had been under the jurisdiction of the court for a period of time exceeding one year and that the conditions which led to the assumption of jurisdiction still persist and are unlikely to be remedied by the mother at an early date. The conditions which the Juvenile Officer contends still persist are the mother's habitual alcohol problem, her refusal to visit the child, and the child's continued belief that he was molested by his stepfather under conditions whereby the mother knew or should have known that such acts were occurring. The Juvenile Officer further alleged that conditions of a potentially harmful nature continue to exist, specifically that V.G. has failed to participate in an alcohol treatment program, to participate in individual counseling, to provide financial support for the child and to work toward reunification.

The court heard testimony from two Division of Family Services (DFS) social service workers who supervised J.L.M.'s case after he was removed from V.G.'s custody. Mary Chris Blickham was assigned to J.L.M.'s case from July, 1989, to November, 1989. She was familiar with V.G. and her family, having previously worked with V.G. on another case. Ms. Blickham originally identified two problems to be addressed: J.L.M.'s sexual abuse by V.G.'s husband, C.G., after V.G. was aware that her husband had sexually abused her daughter; and V.G.'s abuse of alcohol and possibly drugs. On July 26, 1989, a Written Service Agreement was entered into by DFS and V.G. This first service agreement required that V.G. submit to a psychological evaluation, that V.G. participate in alcohol abuse counseling, that V.G. contact the shelter where J.L.M. had been placed to arrange visitation, and that V.G. visit J.L.M. weekly.

Ms. Blickham reported that V.G. made no progress during the time she supervised J.L.M.'s case. V.G. did not complete the psychological evaluation scheduled by Ms. Blickham or participate in any alcohol treatment. Outside of seeing J.L.M. once at a court hearing and once at a professional evaluation team staffing, V.G. visited her son only two other times. Additionally, although she appeared capable of working during Ms. Blickham's supervision, V.G. provided J.L.M. with no financial support other than the three dollars she gave J.L.M. at a court hearing, which she later requested be returned to her.

The second DFS social service worker, Wayne Pauley, was assigned J.L.M.'s case on January 15, 1990. At that time he identified the same problems Ms. Blickham had recognized. He also perceived that two new problems were V.G.'s lack of cooperation and J.L.M.'s desire not to visit his mother because J.L.M. believed that if V.G. was not involved in working toward reunification, she did not love or want him. Mr. Pauley prepared a Written Service Agreement which he and V.G. executed on January 30, 1990. The agreement required V.G. to complete a psychological evaluation, to participate in a drug and alcohol screening

and treatment, to visit weekly with J.L.M., and to keep C.G. from seeing J.L.M. On August 8, 1990, a subsequent Written Service Agreement was entered into by Mr. Pauley and V.G. with requirements identical to the January service agreement, except there was no condition concerning V.G.'s husband.

V.G. completed the psychological evaluation in April, 1990, after Mr. Pauley transported her to the appointment to ensure completion of the evaluation. Thereafter, individual therapy was arranged and V.G. attended one session.

A drug and alcohol screening was accomplished in April, 1990. V.G. attended three alcohol abuse treatment sessions with Gordon Marking. V.G. also attended eight Alcoholics Anonymous (AA) meetings, one per week for eight weeks. After the eighth AA meeting, V.G. quit attending because she felt her continued attendance was not necessary. At the time of the hearing on the petition to terminate, V.G. testified she was consuming "a couple of glasses of gin and orange juice." V.G. later recanted this statement, and said she did not have a drinking problem and was not a heavy drinker.

■ The standard of proof for termination cases was established by *In re H.K.*, 762 S.W.2d 465, 469 (Mo.App.1988) (citations omitted), where the court stated:

A juvenile court's termination of parental rights shall be sustained unless "there is no substantial evidence to support it, unless it is contrary to the weight of the evidence, or unless it erroneously declares or applies the law." Further, on review of a court tried case to determine whether the court's judgment is grounded upon sufficient evidence, the court of appeals has been urged to act "with caution and with a firm belief that the decree or judgment is wrong." The appellate court is bound to examine all the facts in the light most favorable to the trial court's order.

To terminate the rights of a parent, one or more of the grounds for termination under § 211.447, RSMo Cum.Supp.1991,[1] must be proven by clear, cogent and convincing evidence. *In Interest of Y.M.H.*, 817 S.W.2d 279, 282 (Mo.App.1991).

■ V.G.'s rights were terminated, in part, pursuant to § 211.447.2(2)(c). This section requires that the juvenile officer demonstrate a "severe act or recurrent acts of ... sexual abuse toward the child or any child in the family by the parent ... or by another under circumstances that indicate that the parent knew or should have known that such acts were being committed toward the child." V.G. contends there was not clear, cogent and convincing evidence to support termination on this basis.

The court received in evidence a copy of the criminal information and the guilty plea of C.G. for sexual contact with J.L.M.[2] Such evidence established that J.L.M. was sexually abused by his stepfather. Additionally, the court took judicial notice of the underlying legal file and the judgment entered by the court on February 8, 1990. In its judgment, the court found that C.G. had sexually molested J.L.M., most recently on or about July 2, 1989, and that although J.L.M. informed V.G. of this and other incidents of abuse, V.G. failed to protect him from such abuse. There was clear, cogent and convincing evidence that J.L.M. has been adjudicated to be abused and that severe acts of sexual and emotional abuse were committed upon J.L.M. by his stepfather under circumstances which indicate that V.G. knew or should have known that such acts were being committed on J.L.M. There was sufficient evidence to support the trial court's findings with respect to § 211.447.2(2)(c). Point I(A) is denied.

■ V.G. also contends there was not clear, cogent and convincing evidence of continuing conditions to support the termi-

---

1. All statutory citations are to Revised Missouri Statutes Cumulative Supplement 1991, unless otherwise stated.

2. Exhibit No. 5 was identified in the transcript as "the information and the guilty plea of [C.G.] to sexual contact with [J.L.M.]." Exhibit No. 5 was not a part of the record on appeal, so it is impossible to determine if the exhibit included a copy of the sentence and judgment, a transcript of the proceeding where [C.G.] entered his guilty plea, or some other document.

nation of parental rights under § 211.447.-2(3). This subsection authorizes the juvenile court to terminate parental rights if the child has been under the jurisdiction of the juvenile court for a period of one year and the court finds that the conditions which led to the assumption of jurisdiction still persist, or that conditions of a potentially harmful nature continue to exist, and there is little likelihood that those conditions will be remedied at an early date.

The evidence in this case focused upon subsections (a) and (b) of § 211.447.2(3). These subsections relate primarily to the success of the parent in complying with the terms of the social service plan entered into with DFS and the success or failure of DFS in adjusting the parents' circumstances or conduct to provide a proper home for the child.

After taking judicial notice of the legal file, the court found that J.L.M. had been under the court's jurisdiction for one year. The testimony of the two DFS social workers was that three separate Written Service Agreements were instituted, and V.G. failed to substantially comply with any of them. A psychological evaluation was a condition of the agreements. Ten months after the psychological evaluation was first required by Ms. Blickham, it was completed. The last two service agreements expressly required that V.G. participate in individual counseling, but she failed to participate in the counseling recommended by her evaluation. The service agreements also required that V.G. participate in an alcohol abuse treatment program. No treatment program was ever completed.

The Written Service Agreements required that V.G. visit weekly with J.L.M., but she failed to consistently visit her son. While under Ms. Blickham's supervision from July, 1989, to November, 1989, V.G. only had four visits with J.L.M. Mr. Pauley testified that during the year and a half he was working with V.G., she had only four visits with J.L.M. outside of court hearings and staffings at DFS. It was during this time that J.L.M. was hospitalized for nearly four months after surgery on his hips. V.G. attempts to excuse her lack of visitation with J.L.M., by emphasizing· those times visitation did not occur due to J.L.M.'s reluctance to visit with her. Although J.L.M.'s attitude was a factor, her own conduct was primarily responsible for the difficulties with visitation. V.G. made little effort to remedy the basis for J.L.M.'s concerns, i.e., her lack of effort toward reunification. Despite this, DFS attempted to promote visitation by providing individual counseling to J.L.M. so that he might deal with his feelings.

There was clear, cogent and convincing evidence that J.L.M. had been under the jurisdiction of the juvenile court for a period of one year and that there continued to be conditions harmful to J.L.M. which are unlikely to be remedied by V.G. at an early date. The trial court found, and the evidence clearly shows, that V.G. made minimal efforts to meet the goals of her DFS Written Service Agreements, despite numerous services afforded to her. V.G. failed to make sufficient progress in complying with the goals of the service agreements to aid her in reunification. There was also clear, cogent and convincing evidence that the efforts of DFS have failed to aid V.G., on a continuing basis, in adjusting her circumstances or conduct so that she could provide a proper home for J.L.M. Point I(B) is denied.

Counsel for V.G. requested this court remand the case, if affirmed, in order that attorney fees could be awarded to him due to his representation of V.G. *State v. Henderson,* 660 S.W.2d 373 (Mo.App.1983). As this is a termination of parental rights case rather than an ongoing juvenile proceeding, it is necessary to remand to afford jurisdiction for the allowance of such fees. It would also have been proper for the appellate court to enter such an order for fees under Rule 84.14, but since a motion for fees is yet to be filed, remand is appropriate.

The judgment is affirmed, but the cause is remanded for disposition of the request by appellant's attorney for fees.

All concur.