In the Interest of M.A.J., G.A.C. and M.R.J., Minors.

Juvenile Officer, Respondent,

v.

J.S.J., Appellant.

No. WD 55789.

Missouri Court of Appeals, Western District.

Aug. 10, 1999.

**178**

Farrell D. Hockemeier, Richmond, for appellant.

George W. Lehnen, III, Pros. Atty., Richmond, for respondent.

J.D. Gorham, Richmond, for appellant.

Before BRECKENRIDGE, C.J., HANNA and ELLIS, JJ.

PATRICIA BRECKENRIDGE, Chief Judge.

J.S.J. (Father) appeals from the juvenile court's "Finding of Jurisdiction And Order of Disposition" in which the court assumed jurisdiction over Father's two natural daughters, removed them from his custody and placed them in the custody and control of the Missouri Division of Family Services pursuant to §§ 211.031.1(1) and (2)(d).[1] Father raises four points of error. His point alleging that the juvenile court erred in failing to examine him regarding his desire for appointment of counsel and failing to appoint counsel, however, is dispositive of this appeal. The juvenile court's judgment is reversed and the cause is remanded.

1. All statutory references are to the Revised Statutes of Missouri 1994, unless otherwise

**Factual and Procedural Background**

On March 12, 1997, the Northwest Missouri Drug Task Force executed a search warrant on the residence of J.S.J. (Father) and S.R.J. (Mother). The search was in response to two hotline calls reporting that a methamphetamine laboratory was being operated in the home. An employee of the Missouri Division of Family Services (DFS) accompanied the law enforcement officers executing the search warrant and took temporary protective custody of three minor children, two of whom were Father's natural daughters. In the home, the Drug Task Force officers and the DFS worker found evidence of drug use and evidence that drugs were being manufactured in the home. They also discovered that the children were housed in unsanitary and unsafe conditions.

On March 13, 1997, the juvenile officer filed petitions in which he alleged Father's two minor daughters were in need of care and treatment under the supervision of the court because the behavior, environment and associations of the juveniles were injurious to their welfare; the parents neglected or refused to provide proper support, required education, medical, surgical or other care necessary for the child's well being; and the children were living in a home alleged to be a public nuisance pursuant to § 195.120. The petitions alleged the children were found in an extremely dirty home where there was very little food, very little clothing for the children and where the children had easy access toxic and hazardous chemicals. Therefore, the juvenile officer requested that the court assume jurisdiction over the children and enter such judgments as necessary for their care, custody, maintenance, treatment and education in accordance with the law and in the children's best interests.

On the same day that the juvenile officer filed the petitions, the juvenile court entered an order of temporary protective

indicated.

custody based upon the allegations contained in the petitions. The court placed the children under the jurisdiction of the court and in a licensed foster home until the juvenile court could conduct a hearing on the matter. The court also appointed a guardian ad litem (GAL) for the children. Four days later, the juvenile officer, the GAL, a DFS worker, and an officer in the Drug Task Force appeared before the court and presented evidence probative of the allegations in the petitions. The court issued an order continuing temporary protective custody and placing the children with their maternal grandfather and the maternal grandfather's girlfriend, with no visitation for either parent, pending further hearing on the matter.

On March 19, 1997, the parents retained counsel to represent them in the juvenile proceedings. The parents then requested and were granted supervised visitation with the children. Two months later, however, the parents' attorney was granted leave to withdraw due to the parents' failure to cooperate. On June 11, 1997, Father appeared before the juvenile court without counsel. The record indicates that the only action taken by the court on that day was to continue the case to July 9, 1997. On July 9th, Father again appeared without an attorney and the case was continued to August. Father claims that on July 8th or 9th, he requested counsel be appointed to represent him; however, the court's docket entry does not indicate that he made such a request. Father did not appear at the August hearing. The record indicates that the only action taken by the court at the August hearing was to appoint another judge to hear the case. Father subsequently filed a pro se motion asking that Mother, the children's maternal grandfather, and the maternal grandfather's girlfriend, be held in contempt, and a pro se motion to dismiss the petition pertaining to M.A.J.

On January 9, 1998, the court held a hearing on the juvenile officer's petitions. Father appeared in person and without counsel. The juvenile officer presented evidence through the testimony of the Ray County DFS worker, a narcotics officer with the North Central Missouri Drug Task Force, Father and Mother. When Father was called as a witness, the juvenile officer asked him whether he understood that he had a right to be represented by counsel. Father responded that he understood. Father also stated that he had requested that the judge previously assigned to the case appoint counsel to represent him, but no attorney had been appointed. When Father was then asked if he was willing to proceed without an attorney, he answered that he would prefer to have the advice of counsel. In response to questions by the GAL, Father agreed that he was previously represented in the proceeding by an attorney and then indicated that he was willing to proceed on his pro se motion for contempt, but not on the adjudication of the petitions. Nevertheless, the GAL and then the juvenile officer cross-examined Father at length concerning the merits of the petitions. When Father was then given the opportunity to present evidence, he testified extensively in a narrative form regarding the allegations in the petitions.

Following the hearing, the judge orally indicated that the court had jurisdiction and would place the children with DFS. On January 21, 1998, the juvenile court executed a "Finding of Jurisdiction And Order of Disposition" regarding both of Father's minor children. In that order, the court expressly found that Father was advised of his right to an attorney and that he waived that right. Father subsequently requested leave to file an out-of-time appeal, which this court granted. Father then filed his notice of appeal to this court.

After Father filed his notice of appeal, the juvenile court held a hearing to address motions pending before it. The juvenile court issued a judgment in which it (1) found Father was indigent and appointed appellate counsel for Father; (2) denied Father's motion to set aside the January

21, 1998 order placing custody of the children with DFS and physical custody with the maternal grandfather; (3) found a change in circumstances requiring the removal of the children from the maternal grandfather's custody and ordered that they be placed in a licensed foster home; and (4) awarded Father visitation with the minor children on alternating Saturdays from 10:00 a.m. until 6 p.m.

## No Record Indicating that Father Was Advised of his Right to Appointed Counsel or that He Waived his Right

█ In his first point, Father argues that the juvenile court erred in failing to examine him about his desire for representation at the dispositional hearing and in failing to appoint counsel to represent him at the hearing. Father relies on Rule 116.01 and § 211.211 for his argument that he was entitled to representation at the hearing. He maintains that because the juvenile court did not inquire about his desire for counsel, the requirements of Rule 116.01 and § 211.211 were not satisfied, and he was, therefore, denied a full and fair hearing. The State responds that Father was aware of his right to counsel and, by his conduct prior to the hearing, he waived his right to appointed counsel.

█ This court will affirm the juvenile court's order unless there is no substantial evidence to support it, it is contrary to the weight of the evidence, or it erroneously declares or applies the law. *In Interest of J.L.M.*, 848 S.W.2d 502, 504 (Mo.App. 1993). A parent's right to appointed counsel in juvenile proceedings is set out in Rule 116.01 and § 211.211.4. Rule 116.01, entitled "RIGHT TO COUNSEL," states, in pertinent part:

a. A party is entitled to be represented by counsel in all proceedings.

\* \* \*

d. When a petition has been filed and the juvenile's custodian appears before the court without counsel, the court shall appoint counsel for the custodian if it finds:

(1) that the custodian is indigent; and

(2) that the custodian desires the appointment of counsel; and

(3) that a full and fair hearing requires appointment of counsel for the custodian.

The language of § 211.211.4 is identical to that of Rule 116.01(d). Section 211.211.4 and Rule 116.01(d) directed the juvenile court to appoint counsel for Father if he met the statutory criteria.

In its judgment, the juvenile court found that Father was advised of his right to an attorney and that he waived that right. The record does not support such findings. An attorney originally represented Father in the proceedings, but that attorney withdrew about seven months prior to the adjudication of the juvenile officer's petitions. Father appeared before the juvenile court without counsel for the first time on June 11, 1997. The record indicates that the only action taken by the court on that day was to continue the case to July 9, 1997. There is nothing in the record to show that the issue of counsel for Father was raised at that time. Father next appeared in court on July 9th. He claims that, on July 8th or 9th, he requested that counsel be appointed to represent him, and the judge assigned to the case at that time stated that an attorney would be appointed for Father. The court's docket entry does not indicate that Father made such a request; the court merely continued the case to August. Father did not appear at the August hearing. On that date, the court assigned a different judge to hear the case.

The next time that Father appeared in court was on January 9, 1998, for the hearing on the juvenile officer's petitions. Father appeared without counsel. At the beginning of the hearing, the court merely noted that Father was appearing in person and without counsel. The issue of appointment of counsel for Father was not raised until Father was called as a witness for the

juvenile officer. At the beginning of Father's testimony, the juvenile officer asked Father if he understood that he had a right to be represented by an attorney. Father answered that he understood. Father further testified that on July 8, 1997, he had requested that the judge previously assigned to the case appoint him an attorney, and the judge said he would do so, but that one had not yet been appointed for him. The juvenile officer asked Father if he wanted the juvenile court to allow him to proceed without an attorney. Father replied that he would rather have the advice of counsel. The juvenile officer ceased questioning Father at that time.

The GAL then asked Father if he, at one time, did have an attorney representing him in the case, and Father testified that he had. Father testified that he would be willing to answer questions on his motion for contempt, but not on the juvenile officer's petitions. Upon further examination by the GAL and the juvenile officer, however, Father proceeded to answer several questions pertaining to the allegations in the petitions. In a lengthy narrative that occupies over twelve pages of the transcript, Father, on his own, testified regarding the allegations in the petitions. When the GAL objected to the relevance of Father's testimony, Father twice told the judge that he needed a lawyer and wanted one appointed for him.

The juvenile court could very well have disbelieved Father's testimony that he had requested the judge previously assigned to the case appoint counsel for him, and there is nothing in the record to support Father's allegation that he made such a request. Whether Father requested an attorney at that time is not dispositive, however. The dispositive issues are whether the juvenile court notified Father of his right to counsel, ascertained if Father desired counsel and was entitled to appointed counsel, and whether Father waived his right to appointed counsel. This record does not support a finding that Father was advised of his right to appointed counsel and he knowingly waived it. After Father's counsel withdrew and Father appeared in court without counsel, there is no record that juvenile court notified Father of his right to counsel, or that the court inquired of Father prior to proceeding whether he was indigent and desired representation. Nor does it appear that the juvenile court determined whether a full and fair hearing required the appointment of counsel to represent Father. Since the juvenile court did not address these issues at any time prior to proceeding with the adjudication of the petitions, and made no mention of Father's right to counsel until it issued its judgment, there was a lack of compliance with the requirements of Rule 116.01 and § 211.211.4.

The juvenile officer argues that *In Interest of BMP*, 704 S.W.2d 237 (Mo.App. 1986), supports the juvenile court's ruling. In *BMP*, the Southern District found that a parent waived counsel when the parent appeared at a scheduled termination of parental rights hearing without counsel and first requested appointment of counsel at the start of the hearing. *Id.* at 247–48. *BMP* can be distinguished because it is a termination proceeding where the parents' right to counsel is governed by § 211.462, not § 211.211. Under § 211.462, the summons served upon the parents in a termination proceeding includes notice of the statutory right to have counsel appointed to represent the parents "*if they request counsel.*" (Emphasis added). Because the parents know that they have a right to be represented by counsel and that they must request counsel, it is not unreasonable to require that the request be made before the beginning of the scheduled hearing. In contrast, in a juvenile proceeding on a petition which alleges that a child is a need of care and treatment due to neglect or abuse, the parents do not receive written notice of their right to counsel, nor are the parents informed of the need to request appointment of counsel, prior to appearing in court.

Another Southern District case, *In Interest of LAP*, 640 S.W.2d 511 (Mo.App. 1982), does support the juvenile officer's position, although it is not cited in his brief. In *LAP*, a mother appeared at a temporary custody hearing without counsel. *Id.* at 512. The record on appeal did not reflect any reference to the appointment of counsel for the mother prior to or at the hearing. *Id.* at 512. The record was also silent as to whether the mother was indigent. *Id.* The court found it significant that the mother was given an opportunity to cross-examine and otherwise participate in the hearing, and held that there was "no requirement in Rule 116.01 or other part of the juvenile proceedings either by rule or chapter 211 which would require the court to appoint counsel for the mother on this record." *Id.* The Southern District did note that the mother was given an opportunity to relitigate the issues at a subsequent hearing where she had counsel. *Id.* at 512–13. The holding of *LAP* is contrary to this court's reading of Rule 116.01 and § 211.211, and it will not be followed.

Under the facts of this case, if the court had proceeded as required by rule and statute, it appears that Father would have met all of the criteria requiring that the court appoint counsel for him. The record shows that, after the juvenile officer had filed petitions alleging that Father neglected his children, Father appeared before the court without counsel. Father desired the appointment of counsel. There is the reasonable inference that Father was indigent because he later qualified for appointment of counsel to represent him on appeal. Finally, a review of the transcript from the hearing on the petitions reveals that Father was disadvantaged by his lack of representation because he was unable to adequately present his evidence in accordance with the standards of trial procedure.

Even though the juvenile court failed to comply with the rule and statute, Father would not be entitled to relief on appeal if,

as found by the juvenile court, Father had waived his right to an attorney. From the record before this court, however, it is unclear upon what ground the juvenile court found that Father had waived his right to an attorney. This court has examined both the transcript and the legal file and has found no substantial evidence that Father knowingly waived his right to appointed counsel. *See J.L.M.*, 848 S.W.2d at 504.

■ Because there is no substantial evidence in the record to support the juvenile court's finding that Father was advised of his right to counsel and he waived that right, the juvenile court erred by failing to comply with the requirements of Rule 116.01 and § 211.212. Father was prejudiced by the court's error. The judgment of the juvenile court is, therefore, reversed.

While the record before this court does not demonstrate that Father was notified of his right to appointed counsel and then waived that right, either affirmatively or by his conduct, this court recognizes that there may be facts beyond the record upon which the juvenile court based its findings on these issues. Thus, on remand, the juvenile court may make an additional record or receive additional evidence, if necessary, to ascertain whether Father was notified of his right to appointed counsel and whether Father waived that right. *See State ex. Rel. Division of Family Services v. Standridge*, 676 S.W.2d 513, 517 (Mo. banc 1984) (holding that remand is appropriate where there is insufficient evidence to support ruling, but additional probative evidence may exist); *Outcom, Inc. v. City of Lake St. Louis*, 960 S.W.2d 1, 5 (Mo. App.1996) (finding when appellate court can not dispose of case with "some degree of confidence in the reasonableness, fairness and accuracy of it's conclusion" because the record lacks evidence, "remand necessarily follow[s]"). According to the result of its inquiry, the court should either reinstate its prior judgment or set the matter for rehearing.

Father further argues in his other points that the juvenile court's judgment that his daughters were in need of care and treatment under the supervision of the juvenile court should be reversed outright. This court examined Father's claims that there was not substantial evidence to support the juvenile court's decision that the juveniles were neglected and there was not sufficient evidence of proper venue in Ray County, as well as Father's claim that the juvenile court erred by not making an express determination whether DFS had made reasonable efforts to prevent or eliminate the need for removal of the juveniles from their home since there was not substantial evidence of an "emergency" under § 211.183 to require removal of the children. This court does not find any of these claims to merit an outright reversal of the juvenile court's judgment. There is no need for a full discussion of these claims at this time, since the potential rehearing after remand will render these issues moot if the court finds that Father was not notified of his right to appointed counsel and did not waive that right.

The judgment of the juvenile court is reversed and the cause is remanded for proceedings consistent with this opinion. The children shall remain in the temporary custody of DFS pending the outcome of the juvenile court's determination on remand.

All concur.