**In the Interest of N.H., Plaintiff.**

**Juvenile Officer, Respondent,**

v.

**T.H. (Father), Appellant.**

**No. WD 58373.**

Missouri Court of Appeals,
Western District.

April 10, 2001.

Nancy Agnes Beardsley, Kansas City, for appellant.

Anastacia Renae Adamson, Kimberly A. Carrington, Co–Counsel, Kansas City, for Respondent.

Stephanie Rood, Defendant Acting Pro Se.

Before Presiding Judge LAURA DENVIR STITH, Judge JAMES M. SMART, Jr. and Judge VICTOR C. HOWARD.

LAURA DENVIR STITH, Presiding Judge.

Appellant T.H. (Father) appeals the trial court's judgment restricting his visitation with his daughter, N.H., because the petition filed by the juvenile officer alleging that N.H. was in need of care discussed her mother's wrongdoing, but it gave Father no notice that his parental rights would be restricted, yet the court did restrict his rights, and did so without giving him notice for over one year that he had a right to have counsel appointed to represent him. Father also contends that the trial court erred when, without giving the parties notice or an opportunity to be heard, it entered an order that it labeled "nunc pro tunc," but it in fact substantively changed the judgment rather than merely correcting clerical errors, and thus constituted an amended judgment rather than a nunc pro tunc order.

We agree. The trial court's purported order nunc pro tunc in fact made substantive changes to the initial order and thus constituted an amended judgment. The court erred in entering an amended judgment without notice and without giving the parties an opportunity to be heard, and its amended judgment is thus void. We also concur that the court erred in entering orders affecting Father's visitation rights where, as here, the petition did not give him notice that his rights would be affected by the proceedings. We further find

that the court erred in failing to inform him of his right to counsel for over one year after the initiation of the proceedings and that he adequately preserved his claims where he raised them in a timely manner as soon as counsel was appointed. Accordingly, we reverse and remand for further proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On January 18, 1998, the Juvenile Officer of Jackson County filed a petition alleging that N.H. (Daughter) was in need of care, custody and support because her mother (Mother) had exposed her to danger by allowing her to live in a home containing a methamphetamine lab, and the lab in fact exploded and burned the home to the ground on January 16, 1998, stating:

> [Daughter was] without proper care, custody and support in that her mother placed her in a potentially life-threatening situation by allowing her to be exposed to substances and chemicals commonly used in the production of methamphetamine, which are poisonous, highly inflammable and potentially explosive ... Further, on January 16, 1998, there was an explosion in the basement · of the home [in which Daughter and her mother had lived], which caused a fire, and the home burned to the ground.

The petition made no allegations of any improper conduct or lack of care by Appellant T.H. (Father), who did not reside with Mother.

At a hearing before a commissioner on March 24, 1998, Daughter and Mother were represented by counsel. Father also appeared, but he was not represented.

The court ordered that Daughter be taken from her mother's custody and be placed in the custody of Father, subject to supervision of the Division of Family Services (DFS). Nothing in the court's order indicates that the court informed Father that under Rule 116.01 and Section 211.211 RSMo 1994 [1], Father had the right to an attorney and that one would be appointed for him if he were indigent. Nonetheless, and despite the lack of allegations of any improprieties by Father, the court ordered that both Mother and Father undergo random urinalysis at least twice per month, that Father not move out of his parents' home without court permission, and that he and Mother successfully complete outpatient substance abuse treatment. The court then set a review hearing for September 1998 and ordered each party to bring their respective witnesses.

On September 30, 1998, the court held a review hearing. Although the petition was not amended to allege abuse or neglect by Father, and although, so far as the record shows, Father was still not informed of his right to counsel, and no incident is identified that required removal of Daughter from Father's care, the court ordered that Daughter be placed in her paternal grandparents' care rather than that of Father. The court further ordered that Father and Mother participate in substance abuse treatment as recommended and that they refrain from the use of controlled substances. Further, the court ordered that Mother and Father participate in random urinalysis no less frequently than twice a month and that visitation with Daughter only occur as "therapeutically recommended."

On March 31, 1999, the case came before the court for a review hearing, but Father was finally appointed an attorney to represent his interests and the hearing was

1. All statutory references are to RSMo 1994, unless otherwise indicated.

continued to a later date, although the court did order that Father have no unsupervised contact with Daughter.

On April 29, 1999, the court held a review hearing at which Father was represented by appointed counsel. At this hearing, Father's counsel objected to all the evidence presented against him "on the basis of due process, notice, opportunity to prepare a defense, and Father's first amendment right to rear his child free from state interference." At the conclusion of this hearing, the court failed to address any of the issues raised by Father and ordered that Daughter remain with her grandparents; that Mother and Father submit to random urinalysis; that they participate in individual counseling; that Father complete inpatient substance abuse treatment and refrain from the use of such substances; and that parental visitation with Daughter be as "therapeutically recommended." The court also made a finding that Father's "continued abuse of alcohol" made reunification unlikely.

On October 27, 1999, the parties appeared before the juvenile court. At that time, the juvenile officer requested that a trial date be set to adjudicate whether Father's visitation should be further restricted. Father again raised the objections that he had made at the April hearing. The court again, however, did not address these issues and instead set the case for a new hearing in December 1999.

On December 16, 1999, the court held another review hearing in this matter at which time Father was again represented by counsel. Father again objected to the evidence presented against him, as he had previously done in April and October 1999. Again, the court did not address his allegations, but instead ordered that Father have closely supervised visitation with Daughter and that he not reside in the home of the custodians, his parents. Fur-

ther, the court ordered that he continue to submit to random urinalysis and that he successfully complete outpatient substance abuse treatment and participate in family counseling. The commissioner's findings and recommendations were adopted by the juvenile court judge.

Father filed a motion for rehearing on January 7, 2000, again objecting to lack of notice and lack of counsel and further noting that the court entered its order stating that it adopted and attached DFS's statement that DFS made "reasonable efforts" to reunite Father and Daughter, yet, in fact, no "reasonable efforts" statement was attached to the order. The commissioner, and later the judge, entered an order nunc pro tunc *deleting* the reference to DFS's "reasonable efforts" statement and *adding* findings that: 1) removal of the child from parental custody was necessary to protect the child; 2) reunification was contrary to the interests of the child, because Mother has a chemical dependency; 3) Father had failed to maintain sobriety and failed to complete any treatment program; and 4) Father's use of alcohol resulted in an improper incident in front of the child where Father verbally assaulted his parents. Father now appeals the juvenile court's judgment.

## II. STANDARD OF REVIEW

We will affirm the trial court's decision on appeal unless "there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We "should set aside a judgment on the ground that it is against the weight of the evidence only 'with caution and with a firm belief that the decree or judgment is wrong.'" *Harris v. Harris*, 803 S.W.2d 167, 169 (Mo.App. S.D.1991), *quoting, Jun*

*v. Murphy,* 763 S.W.2d 290, 294 (Mo.App. E.D.1988). We additionally afford the trial court deference concerning its determinations of credibility, and we view the evidence in the light most favorable to the trial court's decision. *Shiflett v. Shiflett,* 954 S.W.2d 489, 492 (Mo.App. W.D.1997). The trial court's judgment "must be affirmed under any reasonable theory supported by the evidence and should be set aside only upon a firm belief that the trial court's judgment was incorrect." *Id.; Guier v. Guier,* 918 S.W.2d 940, 946 (Mo. App. W.D.1996).

### III. NUNC PRO TUNC ORDER

■ Father argues that the lower court erred in entering its judgment nunc pro tunc on January 7, 2000, without affording him any notice or opportunity to be heard, because the nunc pro tunc order made substantive changes to the prior judgment, rather than merely correcting clerical errors. We agree that entry of the nunc pro tunc order was improper.

■ A nunc pro tunc order is an exception to the notice requirement of Rule 75.01. *In re Marriage of Short,* 847 S.W.2d 158, 163 (Mo.App. S.D.1993). But, there are important limits on the use of an order nunc pro tunc. It may only be used to correct clerical errors made in earlier written judgments. Rule 29.12(c). *See State v. Winters,* 900 S.W.2d 636, 641 (Mo. App. W.D.1995); *City of Ferguson v. Nelson,* 438 S.W.2d 249, 253 (Mo.1969). If a court goes beyond merely correcting clerical errors in a judgment and actually alters the judgment in an order it labels "nunc pro tunc," the corrected order may be held void, because this is not a proper use of a nunc pro tunc order and amounts to entry of an amended judgment. The court must give the parties notice and the opportunity to be heard before entering

such an amended judgment. *Short,* 847 S.W.2d at 163.

In the case at bar, the trial court's "nunc pro tunc" judgment entered on January 7, 2000, made four key findings and conclusions not contained in the December 16, 1999, judgment: 1) removal was necessary to protect the child; 2) reunification was contrary to the interests of the child, because Mother has a chemical dependency; 3) Father had failed to maintain sobriety and failed to complete any treatment program; and 4) Father's use of alcohol resulted in an improper incident in front of the child where Father verbally assaulted his parents. This order clearly went beyond merely correcting clerical errors and instead substantively changed the prior order. Accordingly, it was not an appropriate nunc pro tunc order and, under the above cases, the January 7, 2000, judgment is therefore void, because the court entered it without giving the parties notice or an opportunity to be heard.

### IV. JUVENILE OFFICER FAILED TO FILE PETITION AGAINST FATHER AND COURT FAILED TO APPOINT COUNSEL

■ Father also argues that the juvenile court erred in restricting his visitation with Daughter because "there has never been any adjudication by any court nor any petition, motion, or other pleading" that alleges Father's conduct was injurious or detrimental to the best interests of Daughter, and, as such, Father's due process rights have been violated. Father argues that the juvenile court may not enter orders that remove a child from parental custody, restrict parental visitation, or place other restrictive orders on a parent, without the juvenile officer filing "*something,* which in some fashion accuses Father of improper conduct and alerts him to the fact that his conduct will be an issue

before the court which may lead to orders that impact or restrict certain of Father's rights."

In support of his argument, Father cites us to *In Interest of M.J.S.*, 724 S.W.2d 318 (Mo.App. W.D.1987). In *M.J.S.*, the juvenile officer filed a petition against the mother, alleging that she sexually abused her child and that it would be in the child's best interest to be placed in the father's temporary custody. At the hearing on the issue, the juvenile court found that the mother had not abused the child, and she was granted "full and free" visitation with the child, whereas the court restricted the father's visitation rights to weekly supervised contacts. Father appealed, and this Court found that the juvenile officer's petition "did not afford [father] adequate notice that his parental rights were in jeopardy." *Id.* at 319.

The juvenile officer argued that father had received adequate notice of the issues when mother filed a motion to transfer custody of their son from father to a neutral environment. We found that this did not qualify as adequate notice, for the *petition* was the instrument that should have provided father notice, and the petition did not "contain any allegations against [father] as would provide him with the adequate notice required by due process of law." *Id.* at 320. Accordingly, we reversed, recognizing that "a new petition may be filed if present circumstances indicate the existence of statutory grounds for the assumption of jurisdiction by the juvenile court." *Id.* at 319–20. *Cf. In re Adoption of D.R.E.*, 696 S.W.2d 882 (Mo.App.S.D.1985); *In Interest of D.J.W.*, 994 S.W.2d 60 (Mo.App. W.D.1999). In so doing, we stated:

It is fundamental that restrictions upon parental rights must be in accordance with due process of law. The first requirement of due process is that one

be given sufficient notice that his or her rights are to be challenged in the courts. Furthermore, it is the office of the petition to provide such notice, so that one whose rights are challenged may know what is relied upon as a cause of action in order that he may be prepared at trial to meet the issues raised by the petition.

It is clear that the petition lodged against [mother], alleging that she had sexually abused her son Michael and recommending that Michael be placed in the temporary custody of [father], afforded [father] no notice that *his* parental rights might be curtailed by the juvenile court.

*M.J.S.*, 724 S.W.2d at 319–20. (italicized emphasis in original, bolded emphasis added; citations omitted).

Here, as in *M.J.S.*, the juvenile officer did not file a petition alleging abuse or neglect by Father. The petition, which placed Daughter under the juvenile court's jurisdiction, alleged that Daughter:

[Was] without proper care, custody and support in that her mother placed her in a potentially life-threatening situation by allowing her to be exposed to substances and chemicals commonly used in the production of methamphetamine, which are poisonous, highly inflammable and potentially explosive ... Further, on January 16, 1998, there was an explosion in the basement of the home [in which Daughter and her mother had lived], which caused a fire, and the home burned to the ground.

The petition does not accuse Father of any wrongdoing or improper conduct, and therefore, it does not alert him to the fact that his conduct is at issue before the court or that his parental rights are at issue. No amended petition was ever filed. As such, Father had no notice that his parental rights were going to be examined or "curtailed" by the juvenile court.

The juvenile officer does not seek· to justify the failure to include allegations as to Father in the petition, but rather argues that Father waived his right to object to this lack of notice, because he failed to raise this issue at the initial dispositional hearings or to appeal the orders restricting his rights prior to the appointment of counsel for him in the Spring of 1999, and thus these issues were tried by consent. We disagree. The record affirmatively shows that, from the time counsel was appointed for Father in the Spring of 1999 until the dispositional hearings in October and December 1999, counsel for Father has steadfastly raised the issue that Father's due process rights were being violated because no petition had been filed against him giving him notice of the fact that his conduct would be an issue before the Court. Counsel has also repeatedly asserted that any failure to raise this issue earlier did not result in waiver, for at these hearings Father was neither represented by counsel nor was he informed that he had a right to have counsel appointed. We agree.

Rule 116.01 states:

a. A party is entitled to be represented by counsel in all proceedings.

. . . .

d. When a petition has been filed and the juvenile's custodian appears before the court without counsel, the court *shall appoint counsel for the custodian* if it finds:

(1) that the custodian is indigent; and

(2) that the custodian desires the appointment of counsel; and

(3) that a full and fair hearing requires appointment of counsel for the custodian.

e. Counsel shall be allowed a reasonable time in which to prepare to represent the client.

f. Counsel shall serve for all stages of the proceedings, including appeal, unless relieved by the court for good cause shown. If no appeal is taken, services of counsel are terminated following the entry of an order of disposition.

(emphasis added).

 The juvenile officer argues that this Rule applies only if a custodian requests counsel, and Father has not shown that he made such a request here. As we held *In Interest of M.A.J.,* 998 S.W.2d 177 (Mo.App. W.D.1999), however, it is the court's obligation to inform a custodian of his right to representation, not the custodian's obligation to initiate an inquiry into his right to counsel. In *M.A.J.,* the juvenile court assumed jurisdiction over the father's two daughters because it found they were in need of care and treatment. At the initial hearing on the matter, the father in *M.A.J.* was represented by counsel that he had retained prior to the hearing. Two months after the hearing, however, father's counsel was granted leave to withdraw due to the parents' failure to cooperate. Father claimed that sometime thereafter he requested counsel, but the court's docket did not indicate his request. Approximately six months later, the court held a hearing on the matter, and father appeared in person, unrepresented by counsel. Following the hearing, the court placed the children with DFS. Father subsequently appealed. *Id.* at 179.

On appeal, father argued that the juvenile court erred in failing to examine him about his desire to be represented by counsel at the dispositional hearing and in failing to appoint counsel to represent him. We held that the record did not support a finding that father was notified of his right to an attorney or that he waived that right. We distinguished dispositional hearings such as that at issue in *M.A.J.* from cases

involving termination of parental rights, stating:

> Under Section 211.462, the summons served upon the parents in a termination proceeding includes notice of the statutory right to have counsel appointed to represent the parents *"if they request counsel."* ... Because the parents know that they have a right to be represented by counsel and that they must request counsel, it is not unreasonable to require that the request be made before the beginning of the scheduled hearing. In contrast, in a juvenile proceeding on a petition which alleges that a child is [in] need of care and treatment due to neglect or abuse, the parents do not receive written notice of their right to counsel, nor are the parents informed of the need to request appointment of counsel, prior to appearing in court.

*M.A.J.*, 998 S.W.2d at 181. *Cf. Interest of B.M.P.*, 704 S.W.2d 237 (Mo.App. S.D. 1986). (emphasis in original; citations omitted).

Accordingly, we held that because, under Rule 116.01 and Section 211.211, father would have qualified for appointment of counsel, and because the record did not demonstrate that "[f]ather was advised of his right to counsel and he waived that right, the juvenile court erred by failing to comply with the requirements of Rule 116.01 and Section 211.211." *M.A.J.*, 998 S.W.2d at 182. We also noted:

> Even though the juvenile court failed to comply with the rule and statute, Father would not be entitled to relief on appeal if, as found by the juvenile court, Father had waived his right to an attorney. From the record before this court, however, it is unclear upon what ground the juvenile court found that Father had waived his right to an attorney. This

court has examined both the transcript and the legal file and has found no substantial evidence that Father knowingly waived his right to appointed counsel. *Id.*

Here, it also appears from the record in this Court that Father was not notified of his right to counsel and never affirmatively waived counsel. The juvenile officer notes that no transcript was made of particular prior hearings and speculates that it is possible that Father was informed of this right at one such hearing and waived it. On remand, should the juvenile officer seek to do so, he may arrange for a transcript to be made of any such hearing and present it to the court below for review. In the absence of such a showing, the evidence before us, including the later appointment of counsel, adequately demonstrates the lack of waiver of counsel.

For these reasons, we find that the petition provided no basis on which to restrict Father's custodial rights to Daughter, for it gave Father no notice that his parental rights would be affected by the hearing, and he did not waive his right to raise this issue where he was not informed of his right to counsel and where counsel, once finally appointed, timely raised this issue. Further, the January 7, 2000, judgment is void, because the "nunc pro tunc" order entered by the court below, without notice or hearing, in fact constituted an amended judgment. For all of these reasons we reverse and remand for further proceedings, without prejudice to the right of the juvenile officer to file a new petition against Father if the facts so warrant.[2]

SMART and HOWARD, Judges, concur.

---

2. The juvenile officer's motion to dismiss appeal is denied. For the reasons stated above,

we find that the issues raised were adequately preserved for review.