182 S.W.3d 680 (2006)
In the Interest of L.E.C., J.I.C., and B.C., III, Plaintiffs,
Missouri Children's Division and Juvenile Officer, Respondents,
v.
B.C. (Father), Appellant,
K.J.C. (Mother), Defendant.
Nos. WD 65535-65537.
Missouri Court of Appeals, Western District.
January 3, 2006.
As Modified January 31, 2006.
*681 Thomas Bolling, Marshall, MO, for appellant.
Donald A. Willoh, Jr., Jefferson City, MO, for respondent, Missouri Children's Division.
Jill Harriman, Marshall, MO, for respondent, Juvenile Officer.
George L. Stafford, Slater, MO, for defendant.
Robert L. Alexander, Marshall, MO, for plaintiffs.
*682 Before HAROLD L. LOWENSTEIN, Presiding Judge, JOSEPH M. ELLIS, Judge and THOMAS H. NEWTON, Judge.
JOSEPH M. ELLIS, Judge.
B.C. ("Father") appeals a May 10, 2005 judgment of the Juvenile Division of the Circuit Court of Saline County terminating his rights, as well of those of K.J.C. ("Mother"), to parent their three minor children, L.E.C., J.I.C., and B.C. We hold that the trial court properly found grounds for termination of Father's parental rights[1] to all three children pursuant to section 211.447.4(4)[2] and that termination was in the best interests of the children. Accordingly, we affirm the circuit court's judgment.
Only an abbreviated summary of the facts of this case is necessary. Father and Mother are the natural parents of three minor children: L.E.C. (a female child born on August 24, 1989); J.I.C. (a female child born on September 12, 1990), and B.C. (a male child born on June 21, 1993). On February 26, 1997, J.I.C. was scratching between her legs during her kindergarten class. The school nurse removed a pubic louse from the inside of her labia and notified the Missouri Division of Family Services ("DFS"; now the Children's Division). Social workers from DFS interviewed J.I.C. that day. She gave a graphic and detailed account of sexual abuse, implicating Father as the perpetrator. At the time, J.I.C. was six years old. Mother was also interviewed that afternoon by DFS. Mother was told not to discuss anything with J.I.C. and that the next day DFS would conduct a videotaped interview and a physical exam on J.I.C. J.I.C. was allowed to return home with Mother that evening because Father would not be home. In spite of these instructions, that evening Mother did discuss the allegations of sexual abuse with J.I.C. Mother clearly implied to J.I.C. that she did not believe her. Mother told J.I.C. that Father would go to jail if she lied and told her to tell "the truth."
The next day (February 27, 1997), the Juvenile Court of Saline County assumed jurisdiction over J.I.C., L.E.C., and B.C. and temporarily placed them in the legal custody of DFS. A SAFE exam was conducted on J.I.C., which revealed that her hymeneal opening was double the normal size for a child her age, and that her vaginal vault showed signs of chronic irritation. Father was arrested, and DFS formally sought to have J.I.C., L.E.C., and B.C. removed from the home. On March 20, 1997, while incarcerated and awaiting trial on statutory rape charges involving J.I.C., Father was personally served with a Petition and Summons concerning the removal of the children from his home. The summons served upon Father advised him of his right to appointed counsel and his obligation to notify the Juvenile Court if he wished to have counsel appointed to represent him. Father took no subsequent action and initiated no communication whatsoever with the court concerning the matter until 1999, when he filed a pro se motion with the Juvenile Court requesting that counsel be appointed, which the court granted on April 16, 1999.
On June 18, 1998, Father was found guilty by a jury of the first-degree statutory rape of his daughter J.I.C. and was sentenced, as a persistent sexual offender,[3] *683 to life imprisonment. Extensive efforts to reunite the children with Mother failed, and in November 2001, the juvenile officer for Saline County filed a motion for a permanency hearing as to all three children to determine whether they should continue in foster care or be returned to Mother. After conducting such a hearing and receiving evidence, on March 14, 2002, the court terminated Mother's visitation rights and changed the permanency plan from reunification with Mother to adoption. Mother appealed, but the judgment was affirmed. See In the Interest of L.E.C., 94 S.W.3d 420 (Mo.App. W.D.2003). On January 16, 2004, the Missouri Children's Division, through counsel, filed a petition seeking termination of the parental rights of Father and Mother as to all three children. On February 11, 2004, while incarcerated in the custody of the Missouri Department of Corrections due to his 1998 conviction for the first-degree statutory rape of J.I.C., Father was personally served with a Petition and Summons concerning the termination of his parental rights. On October 7, 2004, the Children's Division filed its second amended petition for termination of parental rights, which included, among many other things, allegations that Father had been declared to be a persistent sexual offender and that he had been convicted of forcible rape in 1990 and of statutory rape of one of his daughters in 1998. On December 14, 2004, Father filed his answer to the second amended petition, in which he admitted the 1990 and 1998 rape convictions.
Father also filed a "Motion to Dismiss, and In Alternative, Motion to Litigate Core Issue In Trial." In his answer, his supplemental response, and his motion to dismiss, Father claimed that he was prejudiced by a lack of legal representation for a period of roughly two years after being served with the original juvenile court summons. He also claimed that his criminal conviction for the statutory rape of his daughter was obtained through "false evidence" and "false testimony." The Children's Division then filed a motion in limine on January 12, 2005, arguing that Father was collaterally estopped from relitigating, in the termination of parental rights proceeding, his previous convictions based on allegedly false information, false testimony, or fraud on the court. The motion specifically requested that no evidence of "false evidence," "false testimony" or "fraud" be permitted on the issue of Father's criminal convictions.
At a motion hearing held on February 2, 2005, the trial court overruled Father's motion and granted the Children's Division's motion in limine. On March 24, 2005, the court also took up and sustained the Children's Division's "Motion to Apply Law of Case Doctrine," in which the Division asked that Mother be prevented from revisiting any of the factual findings made by the trial court after the 2001 and 2002 permanency hearings, as described by this court on appeal in In the Interest of L.E.C., 94 S.W.3d 420 (Mo.App. W.D.2003).
The termination hearing finally began on April 20, 2005. Father asked to proceed pro se and was granted leave to do so, but the trial court ordered his attorney to remain. Father once again asked the trial court to consider evidence regarding "false evidence and false testimony," but the trial court told him that the court would not "open up the  the facts of that criminal case." Father also complained that he was not represented by counsel from March 1997 to April 1999 because the notification of his right to counsel was on the back of his summons, and once again argued that he should be allowed to present "documentations and witnesses" to prove fraud and perjury in his criminal cases, but the trial court denied him any relief.
*684 After receiving evidence from a number of witnesses, including Father and Mother and the childrens' guardian ad litem, the court took the matter under submission. On May 10, 2005, the trial court entered a detailed 39-page judgment terminating the parental rights of both Father and Mother as to all three children, concluding that the Children's Division had proven, by clear, cogent, and convincing evidence, the statutory grounds for termination under sections 211.447.4(2) (Father and Mother); 211.447.4(3) (Father and Mother); 211.447.4(4) (Father), and 211.447.4(6) (Father and Mother). After making these determinations, the trial court made the further finding, under section 211.447.5, that termination would serve the children's best interests. In doing so, the court made additional findings adverse to both Father and Mother as to each of the applicable factors set forth in section 211.447.6. Father brings this appeal.
Our Supreme Court recently summarized the required findings, standard of proof, and standard of review for judgments terminating parental rights as follows:
The standard of review for judgments terminating parental rights is based on the requirements of section 211.447.5 that 1) the trial court must find by clear, cogent, and convincing evidence that one or more grounds for termination exists under subsections 2, 3 or 4 of section 211.447 and 2) the trial court must find that termination is in the best interests of the children. Whether statutory grounds under section 211.447.2, .3 or .4 have been proven by clear, cogent and convincing evidence is reviewed under the standard set forth in Murphy v. Carron, 536 S.W.2d 30, 32 (Mo. banc 1976); in other words, the trial court's judgment will be affirmed unless no substantial evidence supports it, it is contrary to the weight of the evidence, or it erroneously declares or applies the law. Proof under this standard of only one of the statutory grounds alleged is sufficient to sustain the judgment. Then after determining that one or more statutory grounds have been so proven, the court must consider the question of whether termination also is in the best interests of the child. On that question, the standard of proof at trial is a preponderance of the evidence, and the standard of review on appeal is abuse of discretion. In all of these determinations, the reviewing court is deferential to the fact-findings of the trial court and considers all the evidence and reasonable inferences from the evidence in the light most favorable to the judgment.
In the Interest of P.L.O., 131 S.W.3d 782, 788-89 (Mo. banc 2004) (internal citations omitted). "Clear, cogent and convincing evidence in an action for termination of parental rights is evidence that instantly tilts the scales in favor of termination when weighed against the evidence in opposition and the finder of fact is left with the abiding conviction that the evidence is true." In the Interest of R.K., 982 S.W.2d 803, 806 (Mo.App. W.D.1998).
Father brings three points on appeal. In his first point, Father argues that he was denied his right to appointed counsel for two years during the pendency of the earlier juvenile proceedings which ultimately culminated in the Children's Division's separate action seeking termination of his parental rights. We disagree.
Although the record shows that counsel was promptly appointed for Father upon request, Father claims counsel should have been appointed earlier under Rule 116.01(d) and section 211.211.4, which are *685 nearly identical.[4] Rule 116.01(d) states:
When a petition has been filed and the juvenile's custodian[5] appears before the court without counsel, the court shall appoint counsel for the custodian if it finds:
(1) that the custodian is indigent; and
(2) that the custodian desires the appointment of counsel; and
(3) that a full and fair hearing requires appointment of counsel for the custodian.
The fatal flaw in Father's argument is that Father never "appear[ed] before the court without counsel" before he finally requested that counsel be appointed because he was incarcerated when he was served with the summons on March 20, 1997 and had not filed an answer or other responsive pleading but was actually in default. Moreover, the trial court found (and Father admits in his brief) that the summons advised him of his right to appointed counsel and his obligation to notify the Juvenile Court if he wished to have counsel appointed to represent him. Nevertheless, Father took no subsequent action and initiated no communication with the court concerning the matter until 1999. Under these circumstances, "it was not asking too much of [Father] (who now strenuously insists that his right to counsel was violated) to require that he make known to the trial court his desire to be represented by appointed counsel[.]" In the Interest of B.M.P., 704 S.W.2d 237, 248 (Mo.App. S.D.1986). Indeed, "[t]o reverse the trial court in this case would be to reward [Father] for his indolence in failing to request the appointment of counsel[.]" Id.
Anticipating this result, Father further claims that the notice contained in the summons with which he was served on March 20, 1997 was deficient because it "was contained on the reverse of the summons" rather than on its face and, was, therefore, "obscure" and "not readily discoverable" by him. Here, he points to Rule 128.15, which provides a form to be used for the summons and notice in juvenile cases, claiming that it requires that "the notice of the right to counsel must be contained on the face of the summons."
The form is of no assistance to Father, because it expressly states that "You should make known to the court your desire to have an attorney appointed for you." Moreover, while it contains an explicit and detailed notice of an indigent parent's right to appointed counsel, nowhere does Rule 128.15 require, as claimed by Father despite his failure to cite any case law so holding, that this notice appear "on the face of the summons."
Father was not denied his timely right to appointed counsel. Rather, he waived that right by choosing to ignore the plain language of the summons and negligently failing to request counsel earlier than he did, even though he was properly and fully notified of his right to appointed counsel when he was served with the summons on March 20, 1997. Point denied.
*686 In his third point, Father contends that the trial court erred in refusing to allow him to show that certain witnesses who testified against him at his criminal trial committed perjury and that his first-degree statutory rape conviction was the result of the State's knowing use of false testimony, arguing that had the trial court heard his arguments and seen his evidence in this regard, it might "have decided not to terminate his parental rights despite the conviction."
Section 211.447.4 provides that a county juvenile officer may file a petition to terminate the parental rights of a child's parent when it appears that one or more of six specified grounds for termination exists. Section 211.447.4(4) states that one of those grounds is when:
The parent has been found guilty [of] or pled guilty to a felony violation of chapter 566, RSMo [sexual offenses], when the child or any child in the family was a victim, or a violation of section 568.020, RSMo [incest], when the child or any child in the family was a victim. As used in this subdivision, a "child" means any person who was under eighteen years of age at the time of the crime and who resided with such parent or was related within the third degree of consanguinity or affinity to such parent[.]
While "not every criminal act committed by the parent is severe enough to be abuse or neglect," In the Interest of K.A.W., 133 S.W.3d 1, 11 (Mo. banc 2004), "[a] parent's sexual violation of one of his own children raises a grave challenge to the issue of whether that parent should retain parental rights[.]" In the Interest of E.C.H.J., 160 S.W.3d 815, 818 (Mo.App. W.D.2005). Indeed, such crimes are so severe that in 2004, a year before this case was tried, the General Assembly enacted section 211.038, which provides, in relevant part, that when such a child was the victim, "[n]o child under the jurisdiction of the juvenile court shall be reunited with a parent or placed in a home in which the parent or any person residing in the home has been found guilty of, or pled guilty to, a felony violation of chapter 566, RSMo, ... or a violation of section[] 568.020[.]"
As noted supra, the record demonstrates that in June 1998, Father was found guilty by a jury of the first-degree statutory rape of his daughter J.I.C. and was sentenced to life imprisonment.[6] The record further shows that at the time Father committed this crime, J.I.C. was under eighteen years old and resided with Father. Father's conviction was affirmed on appeal, State v. Costa, 11 S.W.3d 670 (Mo.App. W.D.1999), cert. denied, 530 U.S. 1282, 120 S.Ct. 2758, 147 L.Ed.2d 1019 (2000), as was the denial, after an evidentiary hearing, of his subsequent motion for post-conviction relief under Rule 29.15, Costa v. State, 85 S.W.3d 758 (Mo.App. W.D.2002). Therefore, the Children's Division proved all of the statutory grounds for termination of Father's parental rights under section 211.447.4(4) by clear, cogent, and convincing evidence. Accordingly, the trial court properly declared and applied the law in expressly finding that those grounds for termination existed.
Moreover, when determining whether to terminate the parent-child relationship pursuant to section 211.447.4(4), "[s]ection 211.447.6(6) provides for consideration of the `conviction of the parent of a felony offense that the court finds is of such a nature that the child will be deprived of a *687 stable home for a period of years[.]'" K.A.W., 133 S.W.3d at 11 (quoting § 211.447.6(6)). As properly found by the trial court, that factor weighed heavily against Father, since the nature of his felony conviction (and associated sentence of life imprisonment) is such that all of his children will be deprived of a stable home with Father for many years to come.[7] In reaching its ultimate conclusion that termination of Father's parental rights was in all the childrens' best interests, the trial court also made findings adverse to Father on the other applicable factors set forth in section 211.447.6, all of which are amply supported by the record and none of which he contests on appeal.
In his brief, Father does not deny (or even attempt to deny) any of this. Instead, he claims he should have been allowed to call or cross-examine several opposing witnesses who had also testified against Father at his criminal trial for the purpose of showing that they had committed fraud on the court and perjured themselves in the criminal proceedings "so that the court could properly evaluate the case in deciding whether to terminate [his] parental rights." In particular, he asserts that "his conviction does not mean that all witnesses against him were truthful and honest with the court" and that a "witness who can be shown to have lied in the criminal trial might not be believed by the trial court in the separate, termination of parental rights action."
Father's argument, which he fails to support with any applicable case law whatsoever, is utterly devoid of merit. To begin with, as noted supra, under section 211.447.4(4), "termination is appropriate where the parent has been found guilty of or pleaded guilty to (1) a Missouri Chapter 566 felony violation (sexual abuse) where one of his children was the victim or (2) a violation of Missouri section 568.020 (incest) where one of his children was the victim." E.C.H.J., 160 S.W.3d at 817. During his criminal trial for the first-degree statutory rape of his daughter J.I.C., Father had a full and fair opportunity to litigate the issue of his guilt of a felony violation of chapter 566 when any child in the family was a victim, see Costa, 11 S.W.3d at 672-85, and such a finding of guilt is all that is required to establish adequate grounds for termination under section 211.447.4(4). Moreover, the record demonstrates that in his separate civil action under Rule 29.15, Father was also given a full and fair opportunity to litigate the issue of whether "the State knowingly used false testimony to convict him of the charged offense," as well as whether his conviction was the result of "perjured testimony." Costa, 85 S.W.3d at 758. In both cases, the factual issues Father attempted to raise in the termination of parental rights proceeding were conclusively resolved against him.
Under the circumstances presented in this case, the trial court did not err by precluding Father from attempting to relitigate any of those factual issues in the subsequent termination of parental rights proceeding. The trial court's "application of offensive non-mutual collateral estoppel in this case is consistent with the underlying principles of protecting litigants from the burden of relitigating issues and the promotion of judicial economy," In re Caranchini, 956 S.W.2d 910, 914 (Mo. banc 1997), "as well as promoting the other policies of finality [and] consistency[.]" James v. Paul, 49 S.W.3d 678, 688 (Mo. banc 2001). Indeed, to fail to apply the *688 doctrine in favor of the Children's Division here would be "virtually certain to encourage continued legal stratagems designed to create inconsistent factual adjudications." Id. at 687. Point denied.
In his second (and final) point, Father contends the trial court improperly applied the law of the case doctrine in preventing him from presenting evidence to contradict the facts stated in In the Interest of L.E.C., 94 S.W.3d 420 (Mo.App. W.D.2003). We need not address this point, because a judgment terminating parental rights will be affirmed on appeal if any one of the statutory bases found by the court is adequately supported by the record, In the Interest of N.M.J., 24 S.W.3d 771, 777 (Mo.App. W.D.2000); In the Interest of L.T., 989 S.W.2d 673, 677 (Mo.App. W.D.1999), and the claimed error raised in Point II does not pertain to or otherwise affect the trial court's findings under sections 211.447.4(4) or 211.447.5.
The judgment of the trial court terminating Father's rights to parent his three minor children, L.E.C., J.I.C., and B.C. is affirmed.
All concur.
NOTES
[1] Mother did not appeal.
[2] All statutory references are to RSMo 2000.
[3] Father had been convicted of the felony of forcible rape in 1990. The victim of this crime was the childrens' aunt (Mother's sister).
[4] In his brief, Father mistakenly cites to section 211.462.2, which provides that "[t]he parent or guardian of the person of the child shall be notified of the right to have counsel, and if they request counsel and are financially unable to employ counsel, counsel shall be appointed by the court. Notice of this provision shall be contained in the summons." This statute is not implicated here inasmuch as it only governs the appointment of counsel in actions to terminate parental rights. In the Interest of J.D., 34 S.W.3d 432, 434 (Mo.App. W.D.2000); In the Interest of M.A.J., 998 S.W.2d 177, 181 (Mo.App. W.D.1999).
[5] As used in Rule 116.01, the "custodian" of a juvenile includes a parent. Rule 110.05(a)(5).
[6] Statutory rape in the first degree is a felony violation of Chapter 566 for which the maximum sentence is imprisonment for life. § 566.032.2. Father was found to be a persistent sexual offender under section 558.018 and was sentenced to a term of life imprisonment.
[7] Indeed, under section 211.038, the children can never be reunited with Father or be placed in any home in which he resides.