

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

IN THE INTEREST OF: K.G., L.S., )
AND K.L., )
                            )
        Plaintiffs, )
                            )
JUVENILE OFFICER, )
                            )
        Respondent, )
                            )
        v. )          WD78050
                            )
K.G. (FATHER), )          Opinion filed:  October 6, 2015
                            )
        Appellant, )
                            )
M.G. (MOTHER), )
                            )
        Defendant. )

**APPEAL FROM THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI**
**The Honorable Marco A. Roldan, Judge**

Before Division One:  Cynthia L. Martin, Presiding Judge,
Joseph M. Ellis, Judge and James E. Welsh, Judge

K.A.G. ("Father") appeals from a judgment entered by the Circuit Court of Jackson County, Family Court Division, in which the court assumed jurisdiction over his minor child, K.G., and his minor step-children, K.L. and L.S., pursuant to §

211.031.1(1).[1]  For the following reasons, the judgment is reversed, and the cause is remanded for further proceedings.

In April 2014, Father was living with M.G. ("Mother"), K.L., L.S., and K.G.  Father is the biological father of K.G. and the stepfather to K.L. and L.S.  On April 19, 2014, L.S. disclosed to Mother that Father would subject her to "cleanings", which entailed Father "stick[ing] something cold and wet inside her butthole."  K.L. later disclosed similar incidents of sexual abuse.

Soon thereafter, the Juvenile Officer of Jackson County, Missouri ("Juvenile Officer") filed petitions on behalf of K.G., K.L, and L.S. alleging that the children were without the proper care, custody, and support necessary for their well-being.  With respect to Father,[2] the Juvenile Officer alleged that Father "exposes the child[ren] . . . to domestic violence in the family home and sexually abuse[d]" K.L. and L.S.

Multiple attempts were made to serve Father with a juvenile summons related to each of the Juvenile Officer's petitions on behalf of K.G., K.L., and L.S.  The record contains several that were returned *non est*, and attached to them is a page entitled "To The Juvenile, Parents, Guardian Or Other Respondent."  On that page, the following provision appears:

> You have the right to have an attorney present to assist you at all Court hearings, or you may waive your right to an attorney.  If you do desire to be represented by an attorney, you should begin now to obtain his services.  If you cannot afford to pay an attorney and you wish to have an attorney to represent you, the Court has the power to appoint an attorney to represent you, without charge. . . . You should make known to the Court your desire to have an attorney appointed for you.

---

[1] Unless otherwise noted, all statutory citations are to RSMo 2000 as updated through the 2013 Cumulative Supplement.
[2] The petition also included allegations that Mother exposed the children to domestic violence in the home in that she failed to contact law enforcement regarding Father's assaults upon her and failed to take any other steps to prevent further domestic violence in the home.

Service on Father ultimately was achieved on May 16, 2014. The returns indicate that a copy of each summons was left at Father's "dwelling place or usual abode" with a family member "over the age of 15 years." Those returns, however, do not include the page entitled "To The Juvenile, Parents, Guardian Or Other Respondent" that notifies custodians of their right to an attorney upon request or otherwise reflect that notice was given of the right to an attorney.

On June 16, 2014, a family court commissioner ("the Commissioner") conducted an adjudication hearing. Father appeared at the hearing without counsel. The Juvenile Officer called his first witness, Lori Harlan, an investigator for the Children's Division. Harlan testified that Mother had explained that the reason she did not bring the children to the hospital on the night L.S. disclosed the abuse was because Father attacked Mother, threatened Mother with a knife, and held Mother hostage while the children were present in the home. Harlan further testified that Mother disclosed that, since 2009, Father had been subjecting Mother to domestic violence in the home. Harlan also testified regarding the allegations of abuse K.L. and L.S. made against Father and Father's denial of and responses to those allegations during the investigation.

At the conclusion of Harlan's testimony, the Commissioner inquired if Father had any questions for the witness. Father responded: "No, Your Honor." The parties then discussed the need to set a date to continue the adjudication hearing and went off the record. While off the record, Father requested counsel and filled out an application for appointment of counsel. On June 17, 2014, the Commissioner sustained Father's request for counsel noting: "Although [Father's] request was not made on a timely basis,

3

and this cause is governed by time standards, the court in an abundance of caution sustains the untimely request."

Appointed counsel entered her appearance on behalf of Father on June 20, 2014. She subsequently filed a "Motion to Set Aside Adjudication and for New Trial," contending that the family court violated Father's constitutional rights by failing to present Father with the option of requesting counsel or to appoint counsel to represent him at the start of the adjudication hearing. The Commissioner denied the motion, and the adjudication hearing resumed on August 22, 2014. Father was represented by counsel for the remainder of the proceedings.

On September 4, 2014, the Commissioner entered his order upon the adjudication hearing in which he found that the evidence adduced at the hearing sustained the allegations against Mother and Father. On September 9, 2014, the Commissioner entered his findings and recommendations ordering the children to be committed to the custody of the Children's Division and that Father have no contact with the children. The family court subsequently entered its final judgment in which it adopted the findings and recommendations of the Commissioner.[3] Father raises three points on appeal from that judgment.

In his first point, Father argues that, after he appeared at the adjudication hearing without counsel, the family court committed reversible error by failing to inform him of the right to counsel and to inquire as to whether Father wanted counsel appointed to represent him. He contends that, in so doing, the court violated § 211.211.

---

[3] The judgment also contained orders pertaining to Mother regarding visitation and counseling. Because Mother has not appealed from the family court's judgment, we do not address the portions of the judgment related to Mother.

"Because of the importance of the right to counsel to the fairness of the proceedings, there must be strict and literal compliance with the statutes affecting this right, and failure to strictly comply results in reversible error." *In re C.F.*, 340 S.W.3d 296, 299 (Mo. App. E.D. 2011) (internal quotation omitted). Section 211.211 "governs a party's right to counsel in juvenile proceedings." *Id*. Section 211.211.1 states that "[a] party is entitled to be represented by counsel in all proceedings." Section 211.211.4 further provides:

> When a petition has been filed and the child's custodian appears before the court without counsel, the court shall appoint counsel for the custodian if it finds:
>
> (1) That the custodian is indigent; and
>
> (2) That the custodian desires the appointment of counsel; and
>
> (3) That a full and fair hearing requires appointment of counsel for the custodian.

This Court has interpreted § 211.211.4 to direct the family court to "appoint counsel for [a custodian] if he [or she meets] the statutory criteria." *In re M.A.J.*, 998 S.W.2d 177, 180 (Mo. App. W.D. 1999). This Court has further found that "it is the court's obligation to inform a custodian of his right to representation, not the custodian's obligation to initiate an inquiry into his right to counsel." *In re N.H. v. T.H.*, 41 S.W.3d 607, 613 (Mo. App. W.D. 2001). "[A] trial court commits reversible error when it fails to comply with the requirements of Section 211.211.4, even where a parent was given an opportunity to cross-examine and otherwise participate in the hearings." *In re C.F.*, 340 S.W.3d at 301 (internal quotation omitted).

Here, the record does not indicate that the family court informed Father of his statutory right to representation. Father first appeared before the family court at the

5

adjudication hearing. Counsel for the Juvenile Officer noted Father's presence, but no inquiry was made regarding whether Father had or desired counsel. Likewise, there is no indication that the Commissioner sought to determine whether Father was indigent or whether a full and fair hearing required appointment of counsel for Father. Thus, it follows that, by failing to address these issues at any time prior to the adjudication of the petitions, the family court failed to comply with the requirements of § 211.211.4. *In re M.A.J.*, 998 S.W.2d at 181.

The Juvenile Officer does not contest that the family court made no inquiry into whether Father was entitled to appointment of counsel. Instead, he contends that, under the current state of the law, the family court had no obligation to inquire of Father regarding the appointment of counsel. In doing so, the Juvenile Officer relies on the adoption of a new rule pertaining to a custodian's right to counsel in juvenile and family proceedings.

Prior to 2010, the Missouri Court Rule regarding a custodian's right to appointment of counsel in juvenile proceedings mirrored the language in § 211.211.4. *See* **Rule 116.01** (2009). However, the current rule provides:

> In any proceeding under subdivision (1) of subsection 211.031, RSMo, the court shall appoint counsel for the juvenile's parent, guardian or custodian upon finding that:
>
> (1) the parent, guardian or custodian is indigent; and
>
> (2) the parent, guardian or custodian *requests* appointment of counsel; and
>
> (3) a full and fair hearing requires appointment of counsel for the parent, guardian or custodian.

**Rule 115.03(a)** (emphasis added). Accordingly, in the new version of the rule, the term "desires" was replaced with "requests." Based on this change, the Juvenile Officer contends that "under Rule 115.03, it is incumbent upon [the custodian] to request appointment of counsel if the [family] court is to so provide" and that, until such a request is made, the court has no obligation to notify the custodian of the right to counsel or to make any inquiry into whether the custodian wants counsel appointed to represent them.

Contrary to the Juvenile Officer's assertions, the substitution of the word "requests" for the word "desires" did not effectuate such a sweeping change to the rule. "Desire," as a verb, is defined variously, but typically as "to wish for the possession and enjoyment of, with earnestness; to long for; to covet." ***Webster's New Twentieth Century Dictionary Unabridged,*** 2nd Ed., 493 (1979). Thus, one can have a "desire" without ever expressing it, such that one could readily say, "I had a desire for appointment of counsel six months or a year ago," even though the court was not informed of that "desire." "Request," on the other hand, means "to solicit; to express a wish or desire for; to ask for. . . ." ***Webster's New Twentieth Century Dictionary Unabridged,*** 2nd Ed., 1538 (1979). In other words, a "request" involves informing others of your wish or desire. Clearly then, the use of the word "requests" in the current rule, rather than "desires," was meant to clarify that the custodian, upon being informed of the right to appointment of counsel, as required by the holding in *In re N.H.*, 41 S.W.3d 607, 613 (Mo. App. W.D. 2001), has an affirmative duty at that point to notify the court, either verbally or in writing, that the custodian wants counsel appointed. It was meant to adjust the nature of a finding required for the appointment of counsel and not

7

meant to eliminate the court's responsibility to inquire into whether the appointment of counsel was required.

Another rule adopted in 2010, Rule 124.06(b), makes this abundantly clear by providing that "[a]t . . . an adjudication hearing, *the court shall first determine* whether . . . (3) the parents, guardian or custodian of the juvenile are entitled to appointed counsel." (Emphasis added). Under the plain language of this rule, one of the first things the family court must do at any adjudication hearing is to determine whether the parents, guardian or custodian are entitled to appointment of counsel. Again, under § 211.211.4 and Rule 115.03(a), a custodian is entitled to appointment of counsel if: (1) he or she is indigent; (2) he or she requests/desires counsel; and (3) a full and fair hearing requires appointment of counsel for the custodian. Accordingly, in order to determine if a parent is entitled to counsel, as Rule 124.06(b) requires at any adjudication hearing, the court must inquire of the custodian regarding indigence and the desire for counsel and must evaluate the necessity of counsel for a full and fair hearing. *See* **In re M.A.J.**, 998 S.W.2d at 181-82; **In re N.H.**, 41 S.W.3d at 613. Because no such inquiries were made in this case prior to the adjudication, the family court failed to comply with § 211.211.4 and Rule 124.06(b)(3).

The Juvenile Officer further argues that Father received, along with the summonses that were served on him, written notice of his right to request that counsel be appointed to represent him and that, having received such notice, the burden shifted to Father to request the appointment of counsel. The Juvenile Officer maintains that, having provided Father with such written notice, the family court had no obligation to

make further inquiry at the adjudication hearing regarding the appointment of counsel absent such a request by Father.[4]  This argument is fundamentally flawed.

The underlying facts relied upon by the Juvenile Officer in making this argument are not supported by the record.  Although the record reflects that several of the juvenile summonses issued to Father and returned *non est* included a page containing a provision notifying custodians of their right to appointed counsel upon request, the returns of service for the summonses with which Father was ultimately served do not contain the page with that provision.  Moreover, no record was made when Father requested counsel following Harlan's testimony, and Father does not concede that the summonses with which he was served contained the page with the provision regarding appointment of counsel.  Accordingly, the record simply does not support the Juvenile Officer's contention that Father received notice of his right to counsel or the need to request the appointment of counsel.  On this basis alone, the Juvenile Officer's argument would need to be rejected.

---

[4] The Juvenile Officer attempts to rely on *In re L.E.C.*, 182 S.W.3d 680, 685 (Mo. App. W.D. 2006), in support of this position.  However, that case has no application whatsoever to the case at bar.  In *L.E.C.*, father was personally served with summonses advising him of the right of indigent parents to have counsel appointed for them and instructing him to notify the Juvenile Court if he was qualified and wanted counsel appointed to represent him.  *Id*. at 682.  Two years later, without having ever appeared or made any contact with the court in the interim, father filed a *pro se* motion requesting that counsel be appointed to represent him.  *Id*.  That motion was granted and counsel was appointed to represent father before he ever appeared in court.  *Id*.

The issue on appeal was whether the Juvenile Court erred in failing to *sua sponte* appoint counsel to represent father earlier in the proceedings.  *Id*. at 684.  Father argued that Rule 116.01(d) and § 211.211.4 required such appointment.  *Id*. at 684-85.  In rejecting that argument, this Court noted that Rule 116.01(d) and § 211.211.4 only required the court to appoint counsel under certain circumstances after "the juvenile's custodian appears before the court without counsel" and that "[t]he fatal flaw in [f]ather's argument [wa]s that [f]ather never '[a]ppeared before the court without counsel' before he finally requested that counsel be appointed."  *Id*. at 685.  This Court went on to gratuitously note that, by failing to inform the court of his desire to have counsel appointed to represent him, father waived any right to have counsel appointed for him earlier in the proceeding.  *Id*.

The case at bar relates to the trial court's actions after Father appeared in court without counsel and does not involve a claim that the trial court erred failing to *sua sponte* appoint counsel prior to that appearance.  Accordingly, we fail to see how *L.E.C.* has any bearing on this case.

9

Moreover, even assuming, *arguendo*, that Father received notice of the right to counsel with the summonses, Father's mere appearance at court without counsel after having received such written notice, especially where the notice makes no mention of a deadline for requesting counsel or the potential for waiver of that right, would not constitute an affirmative waiver of the family court's obligation under Rule 124.06(b)(3) and § 211.211.4 to inquire and determine whether Father desired and was entitled to appointment of counsel. Indeed, § 211.211.4 expressly applies anytime "the child's custodian appears before the court without counsel," and Rule 124.06(b)(3) applies at any adjudication hearing. Providing written notice of the right to counsel with the summons does not obviate the family court's clear obligation under Rule 124.06(b)(3) and § 211.211.4 to determine at the start of the adjudication hearing whether Father was entitled to the appointment of counsel.

Again, "[b]ecause of the importance of the right to counsel to the fairness of the proceedings, there must be strict and literal compliance with the statutes affecting this right, and failure to strictly comply results in reversible error." **In re C.F.**, 340 S.W.3d at 299. Due to the lack of compliance with § 211.211.4 and Rule 124.06(b) and the lack of evidence that Father waived his statutory right to counsel, the family court committed reversible error when it failed to inquire of Father regarding his right to appointed counsel when Father arrived without counsel at the adjudication hearing. The family court's judgment with respect to Father, therefore, must be reversed.[5] Point granted.

---

[5] The Juvenile Officer suggests that we should not reverse the family court's judgment because Father cannot establish prejudice resulted from Father's lack of counsel during Harlan's testimony. Harlan, however, offered extensive testimony regarding the allegations of domestic violence Mother made against Father, and she was the only witness to testify regarding Father's denial of and responses to the sexual abuse and domestic violence allegations. The Juvenile Officer also contends that no prejudice resulted because Father had an opportunity to recall Harlan and chose not to do so. The record, however, reflects that the family court issued a subpoena *duces tecum* ordering Harlan to appear in court to testify on

10

The judgment is reversed, and the cause is remanded for proceedings consistent with this opinion.[6]

_____
Joseph M. Ellis, Judge

All concur.

behalf of Father at the continued adjudication hearing on August 22, 2014. The return indicates that Harlan could not be served because she no longer could be found within the county.

[6] Because Father's first point is dispositive, we need not address Father's remaining two points on appeal.

11