

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

IN THE INTEREST OF: K.K.S.S.,     )
           )
      Respondent,     )
           )
JUVENILE OFFICER,     )
           )
      Respondent,     )
           )
v.     )     WD86175
           )
K.D.,     )     Opinion filed: May 14, 2024
           )
      Appellant.     )

**APPEAL FROM THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI**
**THE HONORABLE KEVIN D. HARRELL, JUDGE**

Division Three: Cynthia L. Martin, Presiding Judge,
Mark D. Pfeiffer, Judge and Edward R. Ardini, Jr., Judge

K.D. ("Father"), the natural father of K.K.S.S. ("Child"), appeals from the judgment entered by the Family Court Division of the Circuit Court of Jackson County ("Family Court") placing Child in the custody of the Children's Division based on a finding of abuse by Father. On appeal, Father argues the Family Court abused its discretion when it denied his motion to continue the final day of the adjudication hearing and committed reversible

error by failing to inquire into Father's eligibility and desire to have court-appointed counsel after his retained counsel was allowed to withdraw. Finding no error, we affirm.

## Factual and Procedural Background

On June 29, 2022, the Juvenile Officer filed a petition in the Family Court alleging Child was "without proper care, custody and support necessary for [his] well-being and is subject to this Court's jurisdiction pursuant to Section 211.031.1(1) RSMo. in that the father abuses the child, such that the child is at risk of death."[1] The petition was filed after Child was hospitalized three times within a three-month period resulting from exogenous insulin administration. Each time Child was hospitalized, he was in Father's care. The Family Court issued an Order for Temporary Protective Custody Pursuant to Rule 123.04.[2]

On July 1, 2022, L.S. entered her appearance as Father's attorney. The same day, the Family Court held a protective custody hearing that resulted with Child remaining in the custody of the Children's Division. Father was served with a summons and notice on July 8, 2022, which included a statement of rights. Within those rights, Father was informed of his right to counsel:

> 2. You have the right to have an attorney present to assist you at all court hearings. If you choose to have an attorney, you need to hire one. If you cannot afford to hire an attorney and you wish to have one represent you, you need to ask the Court for one. The Court may appoint an attorney to represent you for free, if you meet the financial guidelines. You may also choose to give up your right to an attorney and not have an attorney. The Court may appoint an attorney for you, or for the juvenile, but may order you to pay all or a part of the costs of

---

[1] All statutory references are to RSMo Cum. Supp. 2021.

[2] All rule references are to the Missouri Supreme Court Rules 2022.

the attorney, if you do not qualify for a free attorney. During the pendency of this action, Father never requested court-appointed counsel and never claimed that he could not afford an attorney.

On August 18, 2022, L.S. filed a Motion to Withdraw due to a fundamental disagreement between her and Father which was granted by the Family Court a few days later. A pre-trial conference was held on September 6, 2022. Father, who appeared without counsel, declined the appointment of counsel, stating that he would hire an attorney. Father's second attorney, W.T., entered his appearance on September 28, 2022, a day before the adjudication hearing was scheduled to begin. W.T. filed a motion for continuance which was granted and the adjudication hearing was reset to October 28, 2022, and November 21, 2022. At the conclusion of the November 21st hearing, W.T. made an oral motion for a continuance,[3] which was granted. In its order, the Family Court stated:

> [t]he Court takes up the father's oral motion to continue the cause following the close of the Juvenile Officer's evidence and the Court having been fully apprised within the premises finds compelling reasons to continue the cause for adjudication beyond the statutorily mandated time frame of August 29, 2022. A partial continuance had been requested and granted for the Juvenile Officer to allow for the additional court dates to accommodate witness schedules, however the initiation of the case would have begun within milestones. The cause was continued from the September 29, 2022 trial date at the request of the father to allow newly retained counsel time to prepare for trial. Despite the additional time afforded counsel to prepare for trial from the first of September to October 28th and the additional time from October 28th to this day, November 21, 2022, counsel requests additional time to secure

---

[3] As addressed later in this Opinion, Father has failed to provide transcripts of the October 28, 2022, and November 21, 2022 hearings so this Court is left to piece together certain aspects of the history of the underlying proceedings.

3

expert testimony. Counsel for the father has not provided opposing counsel a witness or exhibit list but proffers what evidence he intends to adduce.

The Family Court additionally declared that this case "shall not be continued again for adjudication barring exigent or extraordinary circumstances."

The adjudication hearing was scheduled to reconvene on January 20, 2023. On January 9, 2023, Father sent an email to W.T. with the subject line "Request for [W.T.'s] motion to withdrawal as advocant[sic]/representative for [Father] in the matter of [Child]." This email informed W.T. that Father had "retained new representation who will appear at the upcoming and future proceedings as my advocate and you are urged to submit to the court IMMEDIATELY your motion to withdraw as your services are no longer employed here." Father included his new counsel, M.C.S., on the email. W.T. submitted his motion to withdraw as counsel on January 10, 2023, and M.C.S. formally entered her appearance on January 16, 2023. Father also retained attorney T.C. who entered her appearance on January 18, 2023. On that same day, counsel for Father filed a motion to continue the January 20, 2023 hearing, requesting thirty days to prepare for the hearing and obtain "several lab reports and medical reports that have not been submitted[.]" The Family Court denied the motion.

On January 20, 2023, Father's counsel orally renewed the continuance request, asserting they were "missing some critical medical documentation." The Juvenile Officer responded that he had sent "records as soon as [he] got the entry [of appearance]," emailed all records and exhibits at that time, and "had a lengthy discussion last week" with counsel. The Family Court again denied the request for a continuance, prompting M.C.S. and T.C.

4

to request leave to withdraw as counsel for Father, asserting they could not provide competent representation. In response, Father stated "I – I'm not in disagreement. They – I can't say that I want them to withdraw, but I just don't see how they can, within reason, proceed under the conditions that I've allowed to proceed or prepare for – for defense." The Family Court granted M.C.S. and T.C.'s request to withdraw and the adjudication hearing was held, during which Father presented four witnesses on his behalf. The dispositional hearing immediately followed.

In its Judgment, the Family Court found that Father had abused Child. The Judgment noted that on April 29, 2022, Child presented to the emergency department of Children's Mercy Hospital with an altered mental state; severe, persistent and resistant hypoglycemia; seizures; and acute respiratory failure. Child was "in critical condition and at risk of death." On May 20, 2022, Child again presented to the emergency department "due to seizure activity thought to be related to the brain injuries sustained during the events of April 29th which resulted in reduced oxygen levels and toxicity." Finally, "while in the care and custody of the father, on June 25, 2022, the child was intentionally poisoned by the exogenous administration of the drug Insulin, causing the child's blood sugar to fall to clinically dangerous levels and ultimately resulting in severe hypoglycemia, low blood oxygen levels, and an altered mental status." The Family Court concluded that the "Children's Division has exercised reasonable efforts to prevent removal of the child from the home and that removal of the child was necessary due to the intentional poisoning of the child in the father's home and due to the mother's use of illicit substances." This appeal follows.

5

**Analysis**

Father brings three points on appeal. His first two points challenge the Family Court's denial of his motion to continue the January 20, 2023 hearing. In Point III, Father contends that the Family Court committed reversible error by failing to inquire into his eligibility and desire to have court-appointed counsel.

*Motion to Dismiss*

As a preliminary matter, we address the Juvenile Officer's motion to dismiss this appeal based on Father's failure to provide complete transcripts of the proceedings before the Family Court. Hearings in this matter were held on October 28, 2022, November 21, 2022, and January 20, 2023. However, Father has only provided this Court with a transcript of the January 20, 2023 hearing.

"Pursuant to Rule 81.12, the appellant has the duty to order the transcript and compile the record on appeal for the reviewing court to determine the questions presented; without the required documents, this Court has nothing to review." *C.T. v. E.Y.*, 644 S.W.3d 336, 337 (Mo. App. E.D. 2022) (quoting *In re K.S.*, 404 S.W.3d 900, 900-01 (Mo. App. E.D. 2013)). A failure to follow Rule 81.12 can be grounds for dismissal of the appeal. *Id.* at 338.

Father argues that the transcripts from the first two days of hearings are not necessary to the resolution of the issues raised in this appeal which, according to Father, deal solely with the January 20, 2023 hearing. We are dubious of this position as, for example, we note that the Family Court referenced the prior hearings when it ruled on the motion to continue the January 20, 2023 hearing and counsels' motion to withdraw.

6

However, it is our preference to resolve appeals on the merits when possible, and this is particularly true in cases impacting the parent-child relationship. As a result, we deny the Juvenile Officer's motion to dismiss. However, to the extent the transcripts relating to the first two days of hearings are relevant to our consideration of any issue raised in this appeal, "[w]e are entitled to presume that omitted portions of the record are unfavorable to the appellant and favorable to the [Family Court's] decision." *State v. Escalona*, 619 S.W.3d 612, 615 n.3 (Mo. App. W.D. 2021).

*Point I*

In Point I, Father contends that the Family Court abused its discretion when it denied his motion to continue the proceedings held on January 20, 2023, arguing that the Juvenile Officer was required by Rule 123.08 to produce certain medical records and that his failure to do so entitled Father to the requested continuance.

"The denial of a request for a continuance is seldom reversible error, but the trial court has neither an absolute nor an arbitrary discretion, and it will be reversed if it has abused its discretion." *In re P.D.*, 144 S.W.3d 907, 911 (Mo. App. E.D. 2004). "The circuit court abuses its discretion when the ruling is clearly against the logic of the circumstances and is so unreasonable and arbitrary that the ruling shocks the sense of justice and indicates a lack of careful, deliberate consideration." *Macke v. Patton*, 591 S.W.3d 865, 868 (Mo. banc 2019) (internal marks omitted).

Father's argument in Point I is grounded in Rule 123.08(a). Under that rule, the Juvenile Officer and Children's Division are to "make available to all other parties or their counsel . . . documents and records, to the extent relevant to the allegations of the petition

7

or motion to modify" in any proceeding under section 211.031.1(1). Father claims that there are lab reports "missing" from Child's medical records produced by the Juvenile Officer that were "exculpatory in nature and directly contradicted allegations that [Father] abused [Child]" and insists that the Juvenile Officer was obligated to provide these "missing lab reports" under Rule 123.08(a).[4] Father's position is not well-taken.

Under Rule 123.08, the Juvenile Officer is only required to produce records in his actual possession, and "neither the juvenile officer nor the children's division has any obligation under this Rule 123.08 to request or obtain the identified documents and records for any other party[.]" Rule 123.08(b).

The record does not indicate, and Father does not allege, that the Juvenile Officer had the "missing lab reports" in his possession. This is fatal to Father's argument.

Point I is denied.

*Point II*

Father's second point on appeal asserts that the Family Court abused its discretion when it denied his motion to continue the January 20, 2023, proceedings, arguing the Family Court failed to afford his counsel "reasonable time" to prepare as required by section 211.211.5, which provides that "[c]ounsel shall be allowed a reasonable time in which to prepare to represent his client."

---

[4] In response to counsel's argument, the Family Court noted that there had already been multiple days of medical testimony during which, without the benefit of the records at issue, W.T. had represented Father "quite competently[.]" Because we do not have the transcripts of those proceedings, we have no ability to independently assess W.T.'s performance and thus accept the Family Court's characterization.

As discussed above, we review the denial of a motion for continuance for an abuse of discretion. *In re P.D.*, 144 S.W.3d at 911. "An appellate court will find an abuse of discretion in denying a motion for a continuance only in extreme cases where it clearly appears that the moving party is free of any dereliction." *Id.* at 911 (internal marks omitted) (Mother not free from any dereliction when she took part in the problems resulting in the request for a continuance). Here, Father is not free of dereliction. Indeed, Father engaged in a serial effort to delay and hinder the adjudication of the underlying proceedings. On multiple occasions, Father retained new counsel on the eve of a scheduled hearing and was rewarded with a continuance.[5] Moreover, when the final continuance was granted following the close of the Juvenile Officer's evidence on November 21, 2022, the Family Court expressed understandable frustration, observed that the case had already been continued "beyond the statutorily mandated time frame of August 29, 2022," and placed the parties on explicit notice that the matter would "not be continued again for adjudication barring exigent or extraordinary circumstances[.]"

Despite the Family Court's clear admonition, Father attempted to secure yet another continuance by again switching attorneys on the eve of a scheduled hearing as he had successfully done on prior occasions. In light of the Family Court's patience shown by previously granting numerous continuances in the face of Father's repetitive conduct that

---

[5] After his original counsel withdrew at Father's request, W.T. entered his appearance on September 28, 2022, resulting in a continuance of the adjudication hearing set for the next day. At the close of the November 21, 2022, hearing, W.T. requested and was granted a continuance. Then, a week before the scheduled conclusion of the adjudication hearing, W.T. withdrew – again at Father's request – and M.C.S. and T.C. entered their appearances and sought the continuance of the January 20, 2023 hearing, the denial of which is the subject of this appeal.

impeded the timely and orderly progression of the case and the unambiguous warning issued by the Family Court nearly two months prior to the January 20, 2023 hearing, we cannot find that the Family Court abused its discretion when it denied Father's motion to continue the January 20, 2023 hearing.

Point II is denied.

*Point III*

In Father's final point on appeal, he asserts the Family Court "committed reversible error in failing to appoint counsel [for Father] . . . during the adjudication and dispositional hearing," arguing section 211.211.4 required the Family Court "to inquire of [Father]" whether he desired and was qualified for court-appointed counsel.

"This court will affirm the juvenile court's order unless there is no substantial evidence to support it, it is contrary to the weight of the evidence, or it erroneously declares or applies the law."[6] *In re M.A.J.*, 998 S.W.2d 177, 180 (Mo. App. W.D. 1999). "Because of the importance of the right to counsel to the fairness of the proceedings, there must be strict and literal compliance with the statutes affecting this right, and failure to strictly comply results in reversible error." *K.G. v. K.G.*, 472 S.W.3d 230, 233-34 (Mo. App. W.D.

---

[6] In his brief, Father argues that the issue was preserved when he "informed the Court, on the record, that he was being forced into representing himself." A close review of the transcript reveals that Father's reference to being "forced" to represent himself was posed as a question seeking clarification as part of a broader colloquy related to a legal issue that had arisen. At no point did Father raise the issue of appointed counsel or section 211.211.4. In fact, the issue of appointed counsel or section 211.211.4 was never raised to the Family Court on January 20, 2023. *See Int. of G.M.G.*, 525 S.W.3d 162, 165 (Mo. App. W.D. 2017) (finding that same issue as raised by Father had not been preserved for review). Nevertheless, because we conclude Father's argument fails under the more lenient standard applicable to preserved error, we will proceed by applying that standard of review.

2015). A parent's right to counsel is set forth in section 211.211.4, and provides that "[w]hen a petition has been filed and the child's custodian appears before the court without counsel, the court shall appoint counsel for the custodian if it finds: (1) That the custodian is indigent; and (2) That the custodian desires the appointment of counsel; and (3) That a full and fair hearing requires appointment of counsel for the custodian."

Father posits that section 211.211.4 imposes a continuing duty upon the Family Court to inquire anytime a child's custodian appears without counsel at an adjudication hearing. While a Family Court must safeguard a child's custodian's right to counsel, we find the sweeping view put forth by Father to be too broad.

Father principally relies on *K.G.* to support his position that the Family Court had an affirmative obligation on January 20, 2023, to make inquiry into whether he desired court-appointed counsel. This reliance is misplaced. In *K.G.*, this Court found a failure to comply with the requirements of section 211.211.4 where the court ***never*** informed the child's custodian, who acted *pro se* throughout the proceedings, of his statutory right to representation. *See K.G.*, 472 S.W.3d at 234 ("Thus, it follows that, by failing to address these issues at any time prior to the adjudication of the petitions, the family court failed to comply with the requirements of § 211.211.4."). The facts in the present case are easily distinguishable. Father was first informed of his statutory right to counsel as part of the summons he received at the initiation of the litigation. At that point, Father retained private counsel (as he did throughout these proceedings). When his first retained counsel withdrew at Father's request, the record indicates that Father was again informed of his statutory right to counsel and, according to the Order Upon Pre-Trial Conference, "[F]ather

11

decline[d] appointment of new counsel and state[d] that he will hire an attorney." As a result, it would be a mischaracterization of the record to suggest that Father was unaware of his statutory right to counsel or that the Family Court was in any manner delinquent in its efforts to safeguard those rights. Instead, Father, having been made aware of his statutory right to counsel on more than one occasion, made the decision – as is also his right – to be represented by retained counsel of his own choosing.

The actions that transpired on January 20, 2023, provide Father no additional assistance in his effort to lay blame for his ultimate predicament of self-representation at the feet of the Family Court. Father became aware on November 21, 2022, of the Family Court's strong resistance to granting any further delays as the case had already surpassed the applicable time standards. Nevertheless, Father, with full knowledge of the risks attendant to again switching counsel, waited nearly six weeks past the November hearing before terminating W.T. and engaging new counsel just days before the January 20, 2023 hearing. It was Father's eleventh-hour effort that produced a very foreseeable outcome – the denial of a continuance, the withdrawal of newly retained counsel (which predictably Father did not contest) and Father left to represent himself.

The Family Court did all that was required of it under section 211.211.4 and exhibited admirable patience with the actions of Father. In the end, Father was left to represent himself on January 20, 2023 by his own actions and is not entitled to relief.

Point III is denied.

12

## Conclusion

For the foregoing reasons, the judgment of the trial court is affirmed.

_____

EDWARD R. ARDINI, JR., JUDGE

All concur.

13